# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

GENA A. STANFORD, )
 )
       Plaintiff, )
v. ) Case No. CIV-14-514-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

The claimant Gena A. Stanford requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 10, 1962, and was fifty years old at the time of the administrative hearing (Tr. 26). She completed the eighth grade, and has worked as a convenience store clerk, fast food worker, sandwich maker, and grill cook (Tr. 20, 160). The claimant alleges she has been unable to work since October 1, 2008, due to diabetes, fibromyalgia, COPD, heart problems, high blood pressure, anxiety, depression, acid reflux, and allergies (Tr. 159).

## Procedural History

On October 4, 2011, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Kenton W. Fulton held an administrative hearing and determined the claimant was not disabled in a written decision dated April 26, 2013 (Tr. 12-21). The Appeals Council then denied review, so the ALJ's written opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, that she can only perform simple tasks and instructions; can engage in no more than occasional interaction with

-3-

coworkers and supervisors; and should avoid concentrated exposure to dust, odors, fumes, pulmonary irritants, and temperature extremes (Tr. 15-16). The ALJ then concluded that although the claimant could not return to her past relevant work, there was nevertheless work she could perform, *e. g.*, price marker, photocopying machine operator, and laundry bagger (Tr. 21).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly account for her obesity, and (ii) by failing to properly assess her credibility. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, fibromyalgia, COPD, diabetic neuropathy, peripheral autonomic neuropathy, hypertension, depression, GERD, insomnia, anxiety, allergies, and obesity (Tr. 14). Records from Good Shepherd Community Health Clinic reveal that the claimant's weight from 2009 through 2011 ranged from 227 to 256 pounds (Tr. 230-245). Treatment at this clinic was largely medication management for hypertension, headaches, diabetes, and asthma (Tr. 230-243). She then began receiving treatment at Family Health Center of Southern Oklahoma (FHCSO) for type II diabetes, major depressive affective disorder, anxiety, diabetic neuropathy, insomnia, eczema, and obesity (Tr. 244). On November 4, 2011, the claimant also complained of pain due to fibromyalgia that affected her whole body, but mainly her feet (Tr. 245). On December 12, 2012, the claimant presented to FHCSO with disability paperwork. Dr. Paul Reel met with her and told her that her specialists needed to fill out the paperwork, and that if he completed the forms they

would be detrimental to her application (Tr. 304). After a full exam, the notes reflect that the claimant's medications were adjusted and there is a note that the claimant did not appear to be a good historian because she appeared to be in no pain at all, but reported her pain at a level of 10 (Tr. 307).

On November 21, 2011, the claimant underwent a psychiatric evaluation with Dr. Adonis Al-Botros (Tr. 265-266). Following the exam, he assessed her with major depression, recurrent, moderate, without suicidality or psychotic features; diabetes mellitus, Type II; fibromyalgia; COPD; acid reflux; allergies; and Axis IV was moderate to severe secondary to psychosocial as well as environmental stressors (Tr. 266). He assigned her a global assessment of functioning score of 90 (Tr. 266).

On December 3, 2011, Dr. William Cooper, D.O., conducted a physical examination of the claimant (Tr. 268). After taking a history from the claimant, Dr. Cooper noted that her lung fields were clear and heart sounds were normal, but that she had 11/18 tender points consistent with a fibromyalgia diagnosis (Tr. 270, 277). She had 5/5 grip strength, could perform gross and fine tactile manipulation, and had adequate finger to thumb opposition (Tr. 270). Additionally, she had tenderness to palpation of the neck, upper back, and lower back, as well as pain during range of motion testing of the cervical and lumbar spines (Tr. 270, 275). He assessed her with diabetes, fibromyalgia, COPD, episodes of chest pain, hypertension, depression, GERD, allergic rhinitis/sinusitis, and obesity (Tr. 270-271).

A state reviewing physician, Dr. Heather J. Hernandez, Ph.D., noted the claimant's mental impairments and prepared a Mental RFC assessment indicating that the claimant

was moderately limited in the ability to understand and remember detailed instructions and carry out detailed instructions. (Tr. 294-295). Dr. Hernandez then found that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, relate to the general public, and adapt to a work situation (Tr. 296). As to her physical impairments, two state reviewing physicians found she had no severe impairments (Tr. 279, 299).

At the administrative hearing, the claimant testified that she weighed 268 pounds and had gained a hundred pounds due to diabetes, and that her medications caused dizziness and occasional nausea (Tr. 32, 34-35). She testified that she believed she was disabled because she cannot stand on her feet for very long, she hurts when she does stand, and her hand and toes (sometimes up to her knees) go numb (Tr. 35). She believed she could lift or carry potentially up to twenty pounds, walk a block, stand ten minutes, or move around about thirty minutes at a time (Tr. 36). She believed she could sit thirty minutes to an hour, but no squatting, and that numbness in her hands causes difficulty with picking things up (Tr. 37). She testified that medications help her sleep through the night, that she helps prepare meals while standing in one place, and that she does at least some of the chores around the house including vacuuming, sweeping, general housekeeping, and laundry (Tr. 38-39). She stated that she gets out of the house once a week, and watches television daily (Tr. 39-40, 48).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. He also discussed the consultative examiner reports, as well as treatment records from her physicians (Tr. 16-19). He found that Dr.

Hernandez's conclusions that the claimant could perform simple tasks and her inability to relate to others on a more than superficial basis were consistent with the evidence in the record, and assigned it great weight (Tr. 17). The ALJ rejected the state reviewing physician opinions that the claimant had no severe physical impairments, noting that her pain from neuropathy and fibromyalgia fell within the definition of severe impairments (Tr. 18). After reviewing each of her impairments, the ALJ concluded that, although they were limiting, they did not support a finding she was unable to engage in *all* work activity (Tr. 18). He then noted that he found the claimant not entirely credible for seven enumerated reasons (Tr. 18). Finally, the ALJ concluded that the claimant was not disabled (Tr. 19).

The claimant first contends that the ALJ erred by failing to properly consider her obesity. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on

the information in the case record." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Here, the record reflects that the claimant's weight ranged from 227-259 pounds and she is five feet, one inch tall. (Tr., *e. g.*, 31, 230-256, 269). The claimant argues that ALJ failed to properly account for her obesity, but the ALJ *did* adequately discuss the claimant's physical and mental impairments and the reasons for his RFC determination. Furthermore, the claimant failed to point to evidence that the claimant's obesity exacerbated her other impairments, instead arguing that her limitations arose from a combination of all her impairments and suggesting that the ALJ should have speculated as to the impact of her obesity. The Court agrees that the ALJ is required to consider the claimant's impairments both singly and in combination, but that instruction stops short of requiring the ALJ to speculate as to the effects of a claimant's impairments. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

The claimant's final contention is that the ALJ erred in assessing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In assessing allegations of pain, an ALJ "must [also] consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 313). Although boilerplate language is disfavored, it "is problematic only when it appears in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012), *quoting Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004). Here, the ALJ *also* set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) that despite suffering from COPD, she had a pulmonary function test showing 96% oxygen saturation; (ii) Dr. Al-Botros's findings indicated, *inter alia*, good hygiene, orientation x3, and estimated IQ of 80 or higher, and intact cognitive functioning and judgment; (iii) Dr. Al-Botros's assigned GAF of 90, which

indicated absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns; (iv) she had 11/18 tender points; (v) Dr. Cooper's physical exam findings including 5/5 grip strength, ability to perform gross and fine tactile manipulation, and normal gait; (vi) Dr. Hernandez's mental RFC findings; and (vii) no indication from the record that the claimant's ability to carry out daily activities was so eroded she was unable to engage in all work activity (Tr. 19). The ALJ therefore gave clear and specific reasons that were linked to the evidence in the record for his credibility assessment. The claimant asserts that these proffered reasons do not explain how they diminish her credibility, and she disagrees with the ALJ's seventh statement, asserting her testimony about daily activities should be interpreted as more limited. But this is essentially asking the Court the reweigh the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") *citing Casias*, 933 F.3d at 800. Additionally, the ALJ even stated that she suffered "primarily from *pain* due to fibromyalgia and neuropathy," but noted that her neuropathy and pain were largely controlled by her medications, and therefore concluded that her pain was not disabling (Tr. 18, emphasis added). Here, "the ALJ provided specific reasons for his credibility determination on the testimony of the claimant . . . about the severity of [her] impairments. Those reasons complement the framework set forth in *Luna* and are not inconsistent with the case law regarding credibility determinations." *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1138 (D. Kan. 2003). The ALJ thus linked his

credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*, and further applied the *Luna* factors to account for her pain. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**